IN THE  UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL A. DiCICCO, STACEY A. | : | |
| DiCICCO, JOSEPH S. MAGUIRE AND | : | |
| RITA M. MAGUIRE | : | |
| | : | |
| individually and on behalf of all | : | Civil Action |
| all others similarly aggrieved | : | No.2:15cv00267JP |
| | : | |
| | : | |
| vs. | : | Class Action |
| | : | |
| CITIZENS FINANCIAL GROUP, INC. | : | |
| | : | |
| and | : | |
| | : | |
| CITIZENS BANK OF  PENNSYLVANIA, INC. | : | |
| 1735 Market Street | : | |
| Philadelphia, PA 19103 | : | |

## Amended Class Action Complaint

## Notice To Preserve Records And Documents

**You are hereby notified to preserve all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) during the pendency of this action that are relevant or may lead to relevant information and to notify your employees, agents and contractors that they are required to take appropriate action to do so.**

## I.      <u>Introduction</u>

Plaintiffs Michael A. DiCicco and  Stacey A. DiCicco, Joseph S. Maguire and Rita M. Maguire bring this Class Action against Citizens Financial Group, Inc. and its subsidiaries ("Citizens") for declaratory relief, restitution and statutory remedies with respect to its charges for Home Equity Lines of Credit (HELOC).

Since at least 2013 Citizens has overbilled Plaintiffs and other borrowers with HELOC loans by charging  excessive "Minimum Payments" on their outstanding loan balances during the 15 year Repayment Period.

In 2003 and 2004, Citizens promoted HELOC loans to Plaintiffs and other borrowers.  These consumer loans had variable below market interest rates that  were advantageous to borrowers but costly to Citizens.   In order to get these loans off its books, since at least 2013 Citizens has accelerated repayment by systematically misrepresenting the correct billing method and miscalculating the borrower's monthly Minimum Payment ("Minimum Payment").  In notices sent to its borrowers near the end of the interest-only Draw Period, Citizens stated:

> This letter is to advise you that in accordance with the terms of your original line of credit agreement your ability to write checks against the above referenced account will cease on [mm/dd/yyyy]...
>
> The terms of your agreement require that **your existing principal balance of [$######.##] will be payable over the next 180 months in equal principal payments** of [$###.##] plus any interest accrued during the billing cycle...

(Emphasis added)

To the contrary, all of Citizens' HELOC Loan Agreements ("Loan Agreements") required level "amortized" payments that were far lower than payments with "equal principal". Instead of charging level amortized payments as required, Citizens has used a non-amortized add-on-interest method. This significantly inflates the Minimum Payment by more than 15% during the early Repayment Period and gives Citizens a windfall.

Citizens' wrongful billing method has been burdensome and caused Plaintiffs and other borrowers serious financial difficulties. Without regards to these overcharges, The Office of the Controller of the Currency has warned that HELOC borrowers face an increased risk of default as their interest-only draw period ends and they face larger payments of both principal and interest. See Exhibit A. Indeed, Citizens has warned the SEC and shareholders that its borrowers will face "HELOC Shock". *See* Exhibit B. Yet Citizens has worsened this HELOC Shock by its systematic overcharges. As a result, borrowers have been required to pay these overcharges to avoid default. Citizens has moved many borrowers into higher rate loans; it has impaired its borrowers' credit by inflating the Minimum Payment; many of these loans have gone into default and foreclosure. Unless relief is granted, Citizens will continue to overcharge Plaintiffs and other HELOC borrowers causing them serious harm and loss.

Plaintiffs ask the Court to order Citizens to correctly calculate the Minimum Payments during the Repayment Period by amortizing the

payments according to the terms of the Loan Agreement.  They also request judgment for   restitution, treble damages,   reasonable attorneys' fees and appropriate statutory relief.

## II.    <u>Parties</u>

1.     Plaintiffs Michael A. DiCicco and Stacey A. DiCicco ("DiCiccos") are individuals who reside at 3108 Dovecote Drive,  Quakertown, Pennsylvania, 18951.

2.     Plaintiffs Joseph S. Maguire and Rita M. Maguire ("Maguires") are individuals who reside at 13 South Cliff Court,  Churchville, Pennsylvania, 18966.  The DiCiccos and Maguires will sometimes be referred to collectively as "Plaintiffs".

3.     Defendant Citizens Financial Group, Inc.  is a banking entity, the exact nature of which is not known, which maintains offices at 1731 Market Street, Philadelphia, Pennsylvania, 19103.

4.     Defendant Citizens Bank of Pennsylvania, Inc. is a banking entity, the exact nature of which is not presently known, which  maintains offices at 1731 Market Street, Philadelphia, Pennsylvania, 19103.   At all relevant times, Citizens Bank of Pennsylvania, Inc. was a wholly owned subsidiary of Citizens Financial Group, Inc. and subject to its direct supervision and control.

5.     At all relevant times, Citizens Bank of Pennsylvania, Inc., acted as

the agent and alter ego of Citizens Financial Group, Inc. in the origination, servicing, management  and collection of the HELOC loans that are the subject of  this action.  Unless otherwise stated they shall be referred to collectively as "Citizens".

6.    At all relevant times, defendants acted by and through their agents servants and employees who were acting in the course and scope of their employment and on behalf of defendants.

## III.    <u>Jurisdiction and Venue</u>

7.    Plaintiffs bring this action seeking class-action status and alleging breach of contract, restitution, claims for injunctive and declaratory relief and violations of the Federal Truth in Lending Act (TILA) and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (PaUTPCPL).  The Class' claims exceed $5 million in the aggregate.  Its members are of different citizenship than the defendants. This Court has diversity jurisdiction over these claims pursuant to 28 U.S.C. sec. 1332 (d). This Court also has federal question jurisdiction under 28 U.S.C. sec. 1331 over the claims asserted under TILA.

8.    Venue is proper in this District because defendant Citizens Bank of Pennsylvania, Inc. is headquartered in this District, and many of the acts and transactions by both defendants that give rise to the violations of law alleged herein occurred within and emanated from defendants' offices in this District.  Specifically, the origination,  servicing and collection of a substantial

number of the HELOC loans and unfair consumer practices were  performed in this District.

## III.    Background and Facts

### Common HELOC Loan Agreements

9**.**    The Plaintiffs, like all Class Members, entered into form Citizens HELOC Loan Agreements. These Loan Agreements "contain [ ] the terms which govern [the] line of credit." They were substantially identical.  Only the names of the borrowers,  dates, maximum loan amounts, interest rates and rate margins varied.

10.    These Loan Agreements provide that  during the initial "Draw Period", the borrower is permitted to draw up to the maximum loan amount and pay interest only on the outstanding principal balance.  At the end of the Draw Period the right to draw terminates; and any balance remaining on the loan is converted to a term loan with a 15 year "Repayment Period".

11.    Citizens' HELOC loans are consumer transactions secured by the borrower's residential real estate.  For example, a copy of the Maguires' recorded mortgage securing their HELOC loan is attached as Exhibit I.

12.     On or about June 5, 2006[1], the DiCiccos and Citizens entered into a HELOC Loan Agreement, Account Number 6007556135. Under their HELOC, the DiCiccos could borrow up to $158,000 during a 7 year Draw Period.  A copy of their Loan Agreement  is  attached as Exhibit C.

13.   On or about April 6, 2004, the Maguires and Citizens entered into a Loan Agreement[2], Account Number 060-00006057984904.     Under their HELOC, the Maguires could borrow up to $475,000 during a 10 year "Draw Period".

**Common End-Of-Draw Notices**

14.     At or near the end of their Draw Periods, Citizens sent the same or similar End-Of-Draw Notices to Plaintiffs  misinforming them of the terms of their HELOC loans with respect to repayment.

15.     On about February 6, 2013, Citizens notified the DiCiccos that they were nearing the end of their Draw Period and were required to repay the outstanding loan balance with interest over the next 180 month (15 years). This End-of-Draw Notice stated:

This letter is to advise you that in accordance with the terms of your

---

[1]  The DiCiccos' first HELOC loan with Citizens originated in 2003 with a 10 year interest only Draw Period and 15 year Repayment Period.  On June 6, 2006, after about 3 years, their first HELOC loan was reset with 7 years remaining in the  Draw Period and a maximum credit line of $158,000.

[2]   The Maguires have been unable to locate their original Loan Agreement and End-of-Draw Notice. However, after reasonable investigation,  they believe that their Loan Agreement and End-of-Draw Notice are substantially the same  as the DiCiccos' Loan Agreement and End-Of-Draw Notice attached as Exhibits C and D respectively, except for the names of the borrowers, maximum loan amounts, dates, interest rates and rate margin.

original line of credit agreement your ability to write checks against the above referenced account will cease on June 9, 2013...

**The terms of your agreement require** that your existing principal balance of $157,372 will be payable over the next 180 months in **equal principal payments** of $874.29 plus any interest accrued during the billing cycle;

(Emphasis added)

A true copy of Citizens' End-Of-Draw Notice to the DiCiccos is attached as Exhibit D.

16.    Before the end of their Draw Period, Citizens sent an End-Of-Draw Notice to the Maguires that was substantially identical to the Notice sent to the DiCiccos.

17.    Citizens' End-of-Draw Notices were false and misleading because the DiCiccos and Maguires' Loan Agreements did not require that the remaining principal balance be paid over 180 months in "equal principal payments."

18.    To the contrary, according to Section 3.c of their Loan Agreements, during the "Repayment Period", the DiCiccos and Maguires were required to make Minimum Payments based on an "amortized" calculation. Section 3.c reads as follows:

### 3. c  Repayment Period

After the Draw Period ends, you will no longer be able to obtain credit advances and must repay the outstanding balance over 15 years (the "Repayment Period").  **During the Repayment Period, your regular payment will be based on an amortization of your balance over a 180 month period** or $20.00, whichever is greater.   Your payments will be due monthly.   **In calculating the payment amount by amortizing the balance over a 180 month period,** we will use the applicable variable Annual Percentage Rate in effect on the day we calculate your payment [emphasis added].  Your "Minimum Payment" will be the regular payment, plus any amount past due and all other charges....

(Emphasis added).

19.   When interest rates are unchanged, an amortized payment schedule for home mortgage loans provides a *level monthly payment* with *varying* amounts of the payment going to principal and interest.  At the beginning of the payment period, the amount allocated to interest is greater than principal. As the loan is paid off, the amount allocated to principal increases and the amount of interest decreases.

**Citizens' Overbilling Practice**

20.   Instead of using an **"amortized"** calculation as required by its Loan Agreements, during the Repayment Period,  Citizens uses a non-amortized add-on-interest method to calculate its borrowers' Minimum  Payment. Under this method, Citizens calculates the Minimum Payment by using a fixed amount of principal - 180th of the loan's principal balance at the end of the

Draw period - to which it adds a varying amount of interest based on the number of days in the billing cycle and the remaining principal.

21.    Citizens' add-on-interest method results in Minimum Payments that are substantially higher than required by the Loan Agreement during approximately the first half of the Repayment Period.

**The DiCicco and Maguire Interest Rates**

22.    According to Section 19 of the Loan Agreement,  the "Annual Percentage Rate" for the life of these HELOC  loans was to be calculated at the end of each month. based on the Wall Street Journal Prime.

23.    The DiCiccos' loan rate is based on the Wall Street Journal Prime plus .5% with a  floor of 2.5%.

24.    The Maguires' loan rate is based on the Wall Street Journal Prime less 1% with a floor of 2.5%.

25.    Since the beginning of their Repayment Period,  the Annual Percentage Rate for the DiCicco's HELOC has been 3.75%; the Percentage Rate for the Maguires HELOC has been 2.5%

26.    These are,  historically, low rates that are favorable to the DiCiccos and Maguires but  unfavorable to Citizens.   The Wall Street Journal's prime rate from 2000 to the present can be found on the internet at Wikipedia.org. A printout is attached as Exhibit E.

**Citizens Overbilled The DiCiccos**

27.     At the end of their Draw Period, the DiCiccos  had a balance of $157,358 owing on their HELOC loan.

28.     Using Citizens' online mortgage payment calculator, the Diciccos' Minimum Payment during the Repayment Period ***should be*** $1,144.34.  A true copy of the amortized calculation and resulting payment schedule for the DiCiccos' HELOC loan is attached as Exhibit F.

29.     In violation of the Loan Agreement, Citizens used its add-on interest method to calculate the DiCiccos' Minimum Payment.  As a result, Citizens overbilled the DiCiccos a substantial amount each month.

30.     During the first 14 months of their Repayment Period (July 9, 2013-September, 9 2014), Citizens charged the DiCiccos between about $1,359 and $1,375 in Minimum Payments (without regard to prepayments, missed payments or late fees and the first irregular payment) instead of $1,144.34 per month on an amortized basis as required by the Loan Agreement.  A true copy of a portion of Citizens' default notice claiming the amount due for this period is attached as Exhibit G.

31.     During this time (July 9, 2013 - September 9, 2014), Citizens overcharged the DiCiccos  $3,122.76 more than was required by their Loan Agreement.   Attached as Exhibit H is a spreadsheet showing the amount Citizens overbilled the DiCiccos and the correct amount due.

**Citizens Overbilled The Maguires**

32.     At the end of their Draw Period, the Maguires  had a balance of $457,300.03 owing on their HELOC loan.

33.     Using Citizens' online mortgage payment calculator, the Maguires' Minimum Payment during the Repayment Period **should be** $3,049.23.  A true copy of the amortized calculation and resulting payment schedule for the Maguires' HELOC loan is attached as Exhibit J.

34.     In violation of the Loan Agreement, Citizens used and continues to use its add-on-interest method to calculate the Maguires' Minimum Payments.  As a result, Citizens overbills the Maguires a substantial amount each month.

35.     For the December 16, 2014-January 16, 2015 billing cycle, Citizens charged the Maguires a Minimum Payment of $3,592.91 instead of $3,049,23 on an amortized basis as required by the Loan Agreement.  A true copy of Citizens' January 16, 2015 billing statement to the Maguires is attached as Exhibit K.

36.      In violation of the Loan Agreement, Citizens overcharged the Maguires $1,727.08 in Minimum Payments  for the November 2014-January 2015 time period.   A spreadsheet showing the amount that Citizens overbilled the Maguires and the correct amounts due for this period is attached as Exhibit L.  This overbilling is continuing.

12

_____

37.    Citizens' calculation of Plaintiffs' Minimum Payment is contrary to the express terms of their Loan Agreements.

38.     Citizens improperly accelerated repayment of Plaintiffs' HELOC loans and deprived them of its benefits.

39.    Citizens' representations in its End-Of-Draw Notices that Plaintiffs were  "required" to repay the outstanding balance of principal in 180 "equal payments"  was false, deceptive and misleading.

40.    At no time prior to the origination of Plaintiffs' HELOC loans did Citizens notify them of the methods it would use to calculate, charge and collect  the Minimum Payments during the Repayment Period.

41.    Plaintiffs reasonably believe that Citizens followed the same policies and billing practices, used the same or similar form contracts and agreements,  notices, billing methods and acted in the same or similar manner with respect to all of the HELOC loans that it originated since 2003 and that have transitioned into the Repayment Period.

## IV.    **Class Action Allegations**

42.    Plaintiffs bring this class action on behalf themselves and all other similarly situated members of the Class and SubClass pursuant to Rule  23(a),

(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class and SubClass:

> All Persons who obtained a HELOC loan from Citizens during the Class Period, the loan had a balance at the end of the Draw Period, and were charged "Minimum Payments" during the Repayment Period.

> The Subclass consists of:

> All Persons who obtained a HELOC loan from Citizens during the Class Period that was secured by  real property in Pennsylvania, the loan had a balance at the end of the Draw Period, and were charged "Minimum Payments" during the Repayment Period.

Plaintiffs believe that the "Class Period" commenced on January 1, 2013 and is continuing.   Plaintiffs reserve the right to modify the Class Period in the event that discovery reveals that Citizens' billing practices began prior to January 1, 2013.

Excluded from the Class and SubClass are defendants, their officers, directors, management, employees, subsidiaries and affiliates.

Plaintiffs reserve the right to modify or amend the Class and Subclass definitions at any time until trial.

14

43.   <u>Numerosity</u>.   Plaintiffs reasonably estimate  that there are more than 1,000 members of the Class and more than 100 members of the Subclass; and that they are so numerous that joinder is impracticable.   Further, the identity and precise number of the Class and SubClass is reasonably ascertainable through the computerized records of the defendants.

44.   <u>Typicality</u>.   Plaintiffs' claims are typical of all Class and Subclass. Plaintiffs and members of the Class and SubClass were damaged by, and as a result of, the same wrongful conduct by defendants.   Plaintiffs reserve the right to add and/or substitute other representative plaintiffs until trial.

45.   <u>Adequacy</u>.   Plaintiffs are adequate Class representatives.   Their interests are aligned with, and not antagonistic to, those of the Class and SubClass.   They do not have any conflicts with the Class or Subclass.   They have engaged experienced counsel to represent the interests of the Class and Subclass and will continue to do so.

46.   <u>Commonality</u>.   Defendants have acted on grounds generally applicable to the plaintiffs, the Class and SubClass.   Common questions of law and fact predominate over individual questions.

A.   There are common questions of material facts.   During the Class Period:

a.   Citizens used the same or similar Loan Agreements with the same or similar terms for all Class members;

b.    All of Citizens' HELOC loans are consumer transactions;

c.    Citizens made the same promises and misrepresentations to all Class members;

d.    Citizens followed the same or similar billing policy and practice in calculating the Minimum Payments for all Class members;

e.    Citizens made the same or similar confusing and deceptive representations to all Class members that it would use an  amortized billing method to calculate the Minimum Payment;

f.    Citizens sent the same or similar End-Of-Draw Notice to all Class members misrepresenting that their Loan Agreements required repayment of the remaining principal balance over "180 months in equal principal payments."

g.    All class members were overbilled and aggrieved by Citizens charging more than the required Minimum Payment;

    h.       Citizens acted in the same or similar manner with respect to all members of the Subclass i.e HELOC loans secured by real property in Pennsylvania.

B.     There are common questions of law.  These include:

    a.       Does Citizens' policy and practice breach the terms of its Loan Agreements?

    b.       Is the Class entitled to injunctive relief?

    c.       Is the Class entitled to restitution?

    d.       Did Citizens use of a non-amortized add-on-interest billing method violate the PaUTPCPL with respect to the Pennsylvania Subclass?

    e.       Did Citizens common misrepresentations in its End-Of-Draw Notices violate the PaUTPCPL with respect to the Subclass?

    f.       Are members of the Subclass entitled to treble damages and other statutory relief under the PaUTPCPL?

    g.       Did Citizens violate the Truth and Lending Act.

47.     <u>Superiority, Efficiency  and Fairness</u>.  A class action is a superior method for the fair and efficient adjudication of this controversy.

     a.    Common questions predominate over individual questions making class action relief appropriate;

     b.    Citizens' records are believed to be computerized, preserved and centrally located, making identification of Class members, Class  discovery, calculation of restitution and notice relatively convenient and inexpensive;

     c.    Resolution of Plaintiffs' case will effectively resolve in a single action the rights of all other persons similarly situated;

     d.    Class treatment will permit a large number of similarly situated individuals to pursue common claims in a single forum, without duplication of evidence, effort, and expense that numerous individual actions would engender;

     e.    The benefits of proceeding through a class mechanism provide a large number of individuals the means to obtain redress on claims that  might not be practicable to pursue individually; the amount at issue would make individual litigation difficult, if not prohibitive;

f.    Although the amount of individual restitution and/or damages may vary, they can be determined from Citizens' records in a systematic and uniform manner for each Class member.

**Count I**
**Class v. All Defendants**
**Breach of Contract**
**<u>Declaratory and Injunctive Relief</u>**

48.     Plaintiffs incorporate by reference all of the allegations above as if set forth at length.

49.     Citizens is in breach of its Loan Agreements with Plaintiffs and the Class.

50.     Plaintiffs and the Class lack an adequate or appropriate remedy to compel Citizens to conform its billing practices to the terms of their Loan Agreements.

51.      Citizens' conduct and overbilling is ongoing.

52.     Unless declaratory and injunctive relief is granted, Plaintiffs and all Class members will be compelled to pay excessive and burdensome charges to Citizens on an ongoing basis or suffer default, foreclosure,  the loss of low-interest loans and impairment of their credit.

53.     Plaintiffs and the Class will suffer irreparable harm which will be difficult to measure unless  Citizens is compelled to use an amortized method to calculate the Minimum Payment as required by its Loan Agreements.  This harm includes but is not limited to:

(a)    Citizens' improper and unauthorized acceleration of repayment of the loan principal;

(b)    The loss of a HELOC loan at historically low interest rates;

(c)    An unlawful and undisclosed penalty for having a loan balance at the end of the Draw Period;

(d)    Default, foreclosure and the loss of their homes.

**WHEREFORE,** Plaintiffs request judgment individually and on behalf of the  Class and against defendants, jointly and severally and that the court grant them the following relief:

(a)    Certify Plaintiffs as Class Representatives and their counsel as Class Counsel;

(b)    Grant Plaintiffs and all Class members preliminary and final declaratory and injunctive relief ordering and directing defendants to:

1.  use an amortized  billing method to calculate the Minimum Payment for Home Equity Lines of Credits loans that were made in 2003 and 2004 and related injunctive and declaratory relief;

2.  modify and/or strike and/or conform any loan default or actions related thereto based in whole

or in part on Citizens' miscalculation of the Minimum Payments;

(c)     Such other relief that is necessary and appropriate.

**Count II**
**Class v. All Defendants**
**Breach of Contract**
**<u>Restitution</u>**

54.     Plaintiffs incorporate by reference all of the allegations above as if set forth at length.

55.     By reason of the aforesaid, Citizens has required Plaintiffs and the Class to make Minimum Payments that are far in excess of the amount required by their Loan Agreements;

56.     Citizens is in breach of its Loan Agreements with Plaintiffs and the Class.

57.     By reason of the aforesaid, Plaintiffs and the Class are entitled to restitution for amounts paid to Citizens during the Repayment Period in excess of the amount required by their Loan Agreements.

**WHEREFORE,** Plaintiffs request judgment individually and on behalf of the Class and against defendants, jointly and severally, and that the court grant them the following relief:

(a)     Certify Plaintiffs as Class Representatives and their counsel

as Class Counsel;

(b) Grant Plaintiffs and all Class members restitution for the amount of Minimum Payments made during the Repayment Period of their Home Equity Line of Credit that are in excess of the amount due by use of an amortized  loan schedule and billing method;

(c) Grant such other relief that is necessary and appropriate.

**Count III
Class  v. All Defendants
Violation of the Truth In Lending Act
(TILA)**

58. Plaintiffs incorporate by reference all of the allegations above as if set forth at length.

59. The TILA required Citizens, prior to extending credit, to disclose to Plaintiffs and the Class "how the amount of any minimum monthly or periodic payment will be determined" during the Repayment Period.  TILA, 15 U.S.C. Section 1637a (a)(8)(c).

60. The TILA prohibited Citizens from unilaterally changing the terms of a HELOC loan after it is opened. TILA, Reg. Z, 12 CFR Sec. 226.5b(f)(3).

61. Prior to extending credit, Citizens failed to disclose to Plaintiffs and the Class how their Minimum Payments were determined during the

Repayment Period as required by TILA,  15 U.S.C. Section 1637a(a)(8)(c) and its regulations.

62.    After extending Credit, Citizens changed the terms of Plaintiffs' and the Class' HELOC loans by unilaterally changing the method of calculating the Minimum Payment contrary to the TILA, Reg. Z, 12 CFR Sec 226.5b(f)(3).

63.    Citizens' End-Of-Draw Notices to Plaintiffs and the Class falsely represented that "the terms of your agreement require that your existing principal balance of  $######## will be payable over the next 180 months in equal  principal  payments" in  violation  of  TILA,   15  U.S.C.  Section 1637a(a)(8)(c) and its regulations.  In fact, all of these Loan Agreements required  an  amortized  schedule  of  180  level  payments  of  principal  and interest.

64.    By reason of these violations, Plaintiffs and the Class are entitled to declaratory and injunctive relief to reform their HELOC loans and to compel Citizens' compliance with the TILA and its regulations.

65.    By reason of the aforesaid, Plaintiffs and the Class are entitled to the maximum statutory damages available under the TILA.

**WHEREFORE,** Plaintiffs request judgment individually and on behalf of the  Class and against defendants, jointly and severally,  and that the court grant them the following relief:

(a)    Certify Plaintiffs as Class Representatives and their counsel

as Class Counsel;

(b)     Grant Plaintiffs and all Class members preliminary and final declaratory and injunctive relief ordering and directing defendants to use an amortized billing method to calculate the Minimum Payment for Home Equity Lines of Credits loans that were made since 2003;

(c)     Grant Plaintiffs and all Class members the maximum statutory penalty available to the Class;

(d)     Award Plaintiffs and the Class reasonable attorneys' fees and costs;

(e)     Grant such other relief that is necessary and appropriate.

### Count IV
### SubClass v. All Defendants
### Violation of the PaUTPCPL

66.     Plaintiffs incorporate by reference all of the allegations above as if set forth at length.

67.     Citizens' representations in its Loan Agreements that it would use an amortized method to calculate the Minimum Payment were deceptive and misleading with respect to the characteristics, standards, benefits and quality of its HELOC loans in violation of 73 P.S. §§201-2(4)(v) and (vii) of the

PaUTPCPL.

68.     Citizens' failure to disclose in its Loan Agreements its method of calculating Minimum Payments prior to origination of these HELOC loans was deceptive and misleading with respect to the characteristics, standards, benefits and quality of the loans in violation of 73 P.S. §§201-2(4)(v) and (vii) of the PaUTPCPL.

69.     Citizens' End-of-Draw Notices to Plaintiffs and the SubClass were deceptive and misleading as to the requirements of the their Loan Agreements in violation of 73 P.S. §§201-2(4)(v) and (vii) of the PaUTPCPL.

70.     Citizens'  conduct created the likelihood of confusion or misunderstanding in violation of 73 P.S. §§201-2(4)(xxi) of the PaUTPCPL.

71.     Plaintiffs and all SubClass members relied on Citizens' misrepresentations and deceptive and confusing conduct; they were all required to read and "acknowledge" these misrepresentations in the Loan Agreements; and they were all required to pay more than was due to avoid default.

72.     As a result of Citizens' representations and conduct, Plaintiffs and all SubClass members have and will be caused substantial monetary damage and harm by being required to pay excessive Minimum Payments during their Repayment Period.

73.   Plaintiffs and all SubClass members are entitled to restitution for the amount of excessive payments made together with declaratory relief ordering Citizens to properly calculate the Minimum Payment.

74.   Plaintiffs and all  SubClass members are entitled to statutory treble damages under the PaUTPCPL for each Minimum Payment collected by Citizens based on a non-amortized calculation.

75.   Plaintiffs and all SubClass members are entitled to reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiffs request judgment individually and on behalf of the  SubClass and against defendants, jointly and severally,  and that the court grant them the following relief:

(a)   Certify Plaintiffs as Class Representatives and their counsel as Class Counsel;

(b)   Grant Plaintiffs and all SubClass members preliminary and final declaratory and injunctive relief ordering and directing defendants to use an amortized billing method to calculate the Minimum Payment for Home Equity Lines of Credit loans that were made in Pennsylvania since 2003;

(c)   Grant Plaintiffs and all SubClass members restitution for the portion of Minimum Payments made during the Repayment Period of their Home Equity Line of Credit in excess of the amount that would be due by use of an amortized billing method with treble damages;

27

(d)     Alternatively, award Plaintiffs and each SubClass member statutory damages for each violation committed by Citizens;

(e)     Award Plaintiffs and the SubClass reasonable attorneys' fees and costs;

(f)     Grant such other relief that is necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of 12.

Respectfully submitted,

By:_s/Ronald Jay Smolow_____
        Ronald Jay Smolow, Esquire

        Ronald Jay Smolow, Attorney At Law
        3 Three Ponds Lane
        Newtown, PA 18940
        (o) 215.579.1111
        (f)  215.579.7949
        Ron@smolow.com

        Marc H. Edelson, Esq.
        Edelson & Associates, LLC
        3 Terry Drive, Suite 205
        Newtown, PA 18940
        215-867-2200
        267-685-0676 (fax)
        medelson@edelson-law.com

        *Attorneys for Plaintiffs and
        the Plaintiff Class*